Filed 9/14/20  In re H.B. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re H.B., A Person Coming Under the Juvenile Court Law. | B305118 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>T.P.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK14595A) |

APPEAL from an order of the Superior Court of Los Angeles County, Steff Padilla, Juvenile Court Referee.  Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

T.P., mother of H.B., appeals from the juvenile court's order denying her petition under Welfare and Institutions Code section 388[1] to modify the court's prior order terminating her family reunification services. T.P. contends the court erred in ruling she failed to show that there were changed circumstances and that reinstating family reunification services was in the best interest of H.B. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Juvenile Court Asserts Jurisdiction over H.B. and Removes Her from T.P.*

On December 9, 2015 officers of the Long Beach Police Department searched the apartment of Lamont B., father of three-month-old H.B., based on a tip Lamont was selling cocaine from his home. Officers found ammunition, drug paraphernalia, and a large amount of cocaine in the apartment, including rock cocaine next to H.B.'s formula. T.P., who did not live with Lamont, had left H.B. at the apartment that day and arranged for Lamont's mother to watch her. The Los Angeles County Department of Children and Family Services learned T.P. knew Lamont was a drug dealer and kept drugs and weapons in the home.

The Department removed H.B. from Lamont's and T.P.'s physical custody and filed a petition under section 300, subdivision (b), alleging, among other things, that Lamont created a detrimental and dangerous home environment for H.B.

---

[1] Statutory references are to the Welfare and Institutions Code.

2

and that T.P. "failed to protect [H.B.] in that she allowed [H.B.] to reside in the home." The juvenile court detained H.B., granted T.P. monitored visitation, and ordered the Department to provide T.P. with referrals for drug testing and resources to assist T.P. in finding stable housing and transportation. The court advised T.P., "You can take this opportunity and say, 'I do not want my daughter to be raised the same way I was. . . .' You take this order . . . and you get a safe place to live. . . . Then you work with [the Department]. . . . You don't keep doing the things you're doing that are causing this instability for your daughter. You find another way. . . . This is a chance right now to do that."[2]

On December 18, 2015 T.P. tested positive for cocaine. T.P. told the Department social worker that it was the only time she used cocaine, that she used it because the Department had taken H.B. from her, and that she did not have a substance abuse problem. The Department amended the petition to allege that T.P. was "a recent abuser of cocaine, which periodically render[ed] [her] incapable of providing regular care and supervision of" H.B., and that T.P.'s substance abuse "place[d] [H.B.] at risk of serious harm."

On March 11, 2016 T.P. pleaded no contest to the allegations in the petition, and the juvenile court declared H.B. a dependent of the court. The court removed H.B. from T.P.'s custody, ordered the Department to provide family reunification services, granted T.P. monitored visits, and ordered T.P. to complete a drug and alcohol program, parenting classes, and individual counseling.

---

[2]     As a child, T.P. was a dependent of the juvenile court "due to her mother's extensive substance abuse history," lived in foster care, and "was a habitual runaway."

B.	*T.P. Fails To Reunify with H.B. After 14 Months of Family Reunification Services*

In the first six months after the juvenile court removed H.B. from T.P.'s custody, T.P. tested negative for drugs three times, but failed to appear for drug tests four times. T.P. regularly visited with H.B., but did not participate in any of the other court-ordered programs. The outpatient substance abuse program discharged T.P. for "excessive absences." As for H.B., the Department reported she appeared "happy," "healthy," and "bonded" to her caregiver.

In March 2017, one year after the juvenile court removed H.B. from T.P.'s custody, the Department reported T.P.'s compliance with her case plan was substantially deficient. T.P. had not submitted to drug testing for seven months and had not provided proof she had completed her court-ordered programs. T.P. also stopped visiting H.B. at the end of 2016. Meanwhile, H.B. "continue[d] to display a strong bond with her foster mother." On May 15, 2017 the juvenile court found T.P. had not made significant progress in resolving the problems that led the court to remove H.B. from her custody. The court terminated family reunification services and set a selection and implementation hearing under section 366.26.

C.	*The Juvenile Court Gives T.P. a Second Chance*

On December 12, 2017 T.P. filed a petition under section 388 asking the juvenile court either to release H.B. to her or to reinstate family reunification services. T.P. submitted proof she had completed an inpatient substance abuse program, transitioned to sober living, completed anger management, parenting, and domestic violence classes, and tested negative for drugs. The Department supported giving T.P. an additional six months of family reunification services. On February 1, 2018 the

juvenile court granted the petition in part, reinstated family reunification services, and allowed T.P. to have unmonitored visits with H.B.  A month later, the court allowed T.P. to bring H.B. to her temporary residence for overnight visits.  The Department observed that T.P. "displayed a strong bond with [H.B.]" and that H.B. "recognize[d] [T.P.] as her mother and has a healthy attachment to her."

Soon after the court relaxed the restrictions on T.P.'s visitation with H.B., however, the Department observed T.P. had been "inconsistently testing" for several months.  Despite a few negative tests, T.P. failed to show up for six tests.  On May 14, 2018 the juvenile court ruled T.P. could not take H.B. for overnight visits until T.P. started testing again.  The court warned T.P.:  "Any missed, dirty, or diluted tests, then visits become monitored."  Soon after the hearing, T.P. tested positive for cocaine on three consecutive tests over a three-week period.  The Department asked the court to terminate family reunification services because T.P. had "exhausted [the] reunification time" and to set the case for a selection and implementation hearing under section 366.26.

D.    *The Juvenile Court (Again) Sets a Selection and Implementation Hearing Under Section 366.26*

On July 25, 2018 the court ordered the Department to resume providing H.B. with permanent placement services and set a hearing under section 366.26 for November 26, 2018.[3]  The

---

[3]    The court's July 25, 2018 order did not explicitly terminate family reunification services.  As discussed, the Department stated T.P. had "exhausted" the "reunification time," but the court's February 1, 2018 order granting T.P. additional family

5

Department later learned that T.P. had only visited H.B. once between June 2018 and October 2018 and that, in October 2018, T.P. was incarcerated with an anticipated release date of December 2019. While T.P. was incarcerated, the Department observed H.B. appeared bonded to her caregiver and seemed happy and healthy in her foster home. H.B.'s foster mother expressed a desire to adopt her. From November 2018 through the end of 2019, the juvenile court continued the section 366.26 hearing several times, ultimately setting the hearing for January 16, 2020.

     E.    *T.P. Petitions for a Third Chance at Reunification*

On January 15, 2020, the day before the scheduled hearing under section 366.26, T.P. filed her second petition under section 388, asking the juvenile court to grant her an additional period of family reunification "to allow [her] to demonstrate continued sobriety and eventually transition [H.B.] to [her] care and custody." T.P. stated that, since her release from custody in September 2019, she had been participating in a substance abuse treatment program, a parenting program, and anger management classes and that she had been "testing clean of all substances." At the February 28, 2020 hearing on her petition,[4] T.P. explained she had been in jail for 12 months for violating the terms of her probation on a drug-related offense because she "stopped reporting." T.P. testified she completed five months of

_____

reunification services did not specify the duration of those services. The parties agree, however, the juvenile court terminated reunification services on July 25, 2018.

[4]    The juvenile court continued the section 366.26 hearing pending the court's ruling on T.P.'s section 388 petition.

the substance abuse treatment program and would graduate from the program "by the middle of [2020]." T.P. acknowledged that she had previously relapsed after completing a substance abuse treatment program, but stated that she had "changed a lot" and "learned how to stay away from the environments that dragged [her] to [abuse drugs]." T.P. said she no longer lived in Long Beach, but moved to Los Angeles, away from the "people, places, and things" that were her "triggers." T.P. stated that her current transitional housing did not allow children to live at the facility, but that she had been "looking for" housing that accepted children.

The Department opposed the petition. The Department pointed out that, even though T.P. was currently participating in a substance abuse treatment program, anger management classes, and parenting classes, she had relapsed in 2018 after completing an inpatient treatment program. The Department cited a recent report by T.P.'s counselor stating that T.P. "has been missing sessions." The counselor explained that a patient who fails to attend a session for 30 days will be dismissed from the program and that T.P. "has been close to being dismissed." The Department acknowledged T.P.'s efforts to build a relationship with H.B. through weekly visits, but argued that H.B. had been in "a loving home" for most of the four years of her life and that additional reunification services would not be in H.B.'s best interest.

The juvenile court denied T.P.'s petition. The court observed that the Department filed the dependency petition in 2015 and that T.P. "disappeared for a good portion of 2016 and 2017"[5] and "wasn't testing." The court stated that, although it

---

[5] T.P. stopped visiting H.B. from the end of 2016 to August 2017.

granted T.P. unmonitored visitation in 2018, she subsequently stopped testing and "found herself incarcerated again for violating the terms and conditions of probation." The court concluded that T.P.'s circumstances were "not substantially changed" and that granting the petition was not in H.B's best interest. The court found that "this child has languished in foster care waiting for [T.P.] and [Lamont] to be able to be clean and sober for an extended period of time" and that T.P. "has had . . . five years since the first incident occurred, and the child is over four" years old. T.P. timely appealed.

## DISCUSSION

A. *Applicable Law and Standard of Review*

Section 388, subdivision (a)(1), provides in pertinent part: "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re J.M.* (2020) 50 Cal.App.5th 833, 845; *In re J.C.* (2014) 226 Cal.App.4th 503, 525.) "'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.'" (*In re J.M.*, at p. 845; accord, *In re Stephanie M.*, at p. 317; see *In re Marilyn H.* (1993) 5 Cal.4th 295, 309 ["[t]he burden . . . is on the parent to prove changed circumstances pursuant to section 388 to revive the reunification issue"]; *In re D.B.* (2013) 217 Cal.App.4th 1080, 1089 [same]; Cal. Rules of Court, rule 5.570(e)(1), (h)(1).) "'[T]he term "new evidence" in section 388 means material evidence that, with due diligence, the party could not have presented at the dependency proceeding at

8

which the order, sought to be modified or set aside, was entered.'" (*In re D.B.*, at p. 1093.)

"The change of circumstances or new evidence 'must be of such significant nature that it requires a setting aside or modification of the challenged prior order.'" (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615; see *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 ["the change in circumstances must be substantial"].) "[A] section 388 petition seeking reinstatement of reunification services or return of the child will necessarily involve a parent who has made mistakes sufficient to support termination of services at some point in the past. The question must be whether the changes the parent made since then are substantial enough to overshadow that prior determination, such that reunification is now in the child's best interests." (*In re J.M.*, *supra*, 50 Cal.App.5th at p. 848.) "A parent establishes a substantial change of circumstances for purposes of section 388 by showing that, during the period between termination of reunification services and the permanency planning hearing, he or she has resolved the previously unresolved issues supporting juvenile court jurisdiction." (*In re J.M.*, at p. 846; see *In re A.A.* (2012) 203 Cal.App.4th 597, 612 ["the problem that initially brought the child within the dependency system must be removed or ameliorated"].)

We review the juvenile court's finding that T.P. failed to carry her initial burden to demonstrate a substantial change of circumstances or to present material new evidence by determining whether the evidence compels a finding in her favor on that issue as a matter of law. (See *In re N.O.* (2019) 31 Cal.App.5th 899, 925; *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1156.) Specifically, we determine whether "the evidence 'was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial

9

determination that it was insufficient to support a finding.""'" (*In re Luis H.* (2017) 14 Cal.App.5th 1223, 1227; see *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) We review for abuse of discretion the juvenile court's ruling that providing T.P. additional reunification services was not in H.B.'s best interest. (See *In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318; *In re J.C.*, *supra*, 226 Cal.App.4th at pp. 525-526.)

> B. *The Evidence Does Not Compel a Finding of Substantially Changed Circumstances or Significant New Evidence*

T.P. argues she "established changed circumstances or new evidence" by presenting evidence that, "[s]ince the termination of her family reunification services on July 25, 2018, [she] had been released from incarceration," was "participating in a substance abuse treatment program," was "testing clean," and "had been sober for 15 to 17 months." The evidence does not compel a finding in T.P.'s favor as a matter of law.

The court based its July 25, 2018 order terminating reunification services on evidence T.P. had relapsed: She tested positive for cocaine three straight times, missed several other tests, and stopped visiting H.B. (from June 7, 2018 to July 25, 2018). At the time of the hearing on her second petition under section 388 in February 2020, T.P. had completed five months of a substance abuse treatment program and tested negative for drugs on three occasions between October 4, 2019 and January 10, 2020. While this evidence may have been "new," it did not compel a finding T.P. had resolved the issue that supported juvenile court jurisdiction, namely, her drug addiction. (See *In re J.M.*, *supra*, 50 Cal.App.5th at p. 846.) Even assuming the three

10

isolated drug test results established T.P. was not using drugs during October 4, 2019 to January 10, 2020, that relatively short period of sobriety did not demonstrate she had overcome her drug addiction, given how long it took for her to confront her substance abuse problem during her first period of reunification services and her extended relapse during her second period of reunification services.  (See *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [parents' three months of sobriety was not sufficient to show changed circumstances after "extensive histories of drug use and years of failing to reunify with their children"]; *In re Mary G. (*2007) 151 Cal.App.4th 184, 206 ["Given the severity of [the mother's] drug problem the court could reasonably find her sobriety between March and . . . June . . . was not particularly compelling."]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423-424 ["full compliance with [the] treatment plan, coupled with seven months of clean tests," was not sufficient to show changed circumstances]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature of addiction that one must be "clean" for a much longer period than 120 days to show real reform."]; see also *In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642 ["the juvenile court properly found that [the father's] belated choice to return to treatment is no guarantee that he will achieve or maintain the sobriety required for him to be a parent"].)

T.P. also had not completed her substance abuse treatment program, and her individual counselor stated T.P. missed so many sessions the counselor almost dismissed her from the program.  Although T.P. asserted she had been sober for 15 to 17 months, she did not present evidence to support that assertion. And T.P. still lived in transitional housing that did not allow children, had recently lost her job and was looking for another one, and indicated she might reestablish a relationship with Lamont, who lived in Long Beach, the very locale of her

11

"triggers." T.P.'s only explanation for relapsing in 2018 was: "I was going through a lot. I was stressing and I ended up relapsing." Although T.P. set admirable goals for herself to stay sober, her life circumstances still presented the kind of stress and pressures that make her vulnerable to another relapse. The court properly considered T.P.'s history of relapsing after completing a substance abuse treatment program in 2018, as well as her inability to comply with the case plan for much of the reunification period. (See *In re Mickel O.*, *supra*, 197 Cal.App.4th at p. 616 ["In considering whether the petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case."].)

We commend T.P. for her efforts to turn her life around after her release from incarceration. Nevertheless, at the time of the hearing on her second section 388 petition, T.P. still had a long way to go to demonstrate a change in circumstances of "such significant nature" (*In re Mickel O.*, *supra*, 197 Cal.App.4th at p. 615) that it justified setting aside the court's order terminating reunification services. The evidence does not compel a finding T.P. established significantly changed circumstances. (See *In re Casey D.* (1999) 70 Cal.App.4th 38, 48 [mother's regular attendance at a drug treatment program (among other rehabilitation efforts) did not show changed circumstances because she had not completed most of the program's requirements and had "a tendency to engage in treatment programs when required to do so by outside agencies and then relapse once the requirement was lifted"]; cf. *In re J.M.*, *supra*, 50 Cal.App.5th at p. 846 [mother established a significant change in circumstances where "she had resolved the domestic violence underlying the initial dependency petition," "had not been in contact with [the father] for over a year," and "had completed all required domestic violence training, and nothing suggested [she]

12

was or had been in another potentially violent or abusive relationship"].)[6]

C. *The Juvenile Court Did Not Abuse Its Discretion in Ruling That Granting the Petition Was Not in H.B.'s Best Interest*

T.P. asserts: "Providing [T.P.] with additional family reunification services and an opportunity to reunify with [H.B.] was clearly in [H.B.'s] best interests." The evidence showed, however, that granting T.P. additional reunification services would have negatively affected H.B.'s overriding interest in permanency and stability.

Although a parent and child "share a fundamental interest in reuniting up to the point at which reunification efforts cease," their interests "diverge[ ] by the point of a [section 366].26 hearing to select and implement a child's permanent plan." (*In re J.C., supra*, 226 Cal.App.4th at p. 527). "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability.'" (*In re Stephanie M., supra*, 7 Cal.4th at p. 317; see *In re Jasmon O.* (1994) 8 Cal.4th 398, 419-420 ["after a child has spent a substantial period in foster care and attempts at reunification have proved fruitless, the child's

---

[6] Contrary to T.P.'s assertion, her release from incarceration was not a changed circumstance. T.P. was not incarcerated on July 25, 2018, when the juvenile court terminated reunification services, and she was not incarcerated on January 15, 2020, when she filed her petition under section 388. The only circumstance that changed during this period was that T.P. completed a 12-month jail term, hardly a circumstance that supported her petition.

13

interest in stability outweighs the parent's interest in asserting the right to the custody and companionship of the child"]; *In re J.C.*, at p. 527 ["after reunification services have terminated, a parent's petition for either an order returning custody or reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability"]; *In re Edward H.* (1996) 43 Cal.App.4th 584, 594 ["on the eve of the section 366.26 . . . hearing, the children's interest in stability was the court's foremost concern and outweighed any interest in reunification"].)

Here, aside from her conclusory assertion that reunifying with H.B. was in H.B.'s best interests, T.P. did not present any evidence to show how giving her a third round of reunification services would further H.B.'s interest in living in a permanent and stable home. H.B. lived almost the entire four years of her life in the home of her foster mother, whom she called "mommy" and to whom she looked for all of her needs. Keeping this case pending for an additional period of uncertainty to allow T.P. to try for the third time to resolve the issues that led to dependency jurisdiction and to repeat her attempts to reunify with H.B. would only delay permanence and stability for H.B. (See *In re Ernesto R.*, *supra*, 230 Cal.App.4th at pp. 223-224 ["[g]ranting a section 388 petition would delay selection of a permanent home and not serve the . . . best interests [of the child]," who "has been in the care of his foster parents for the majority of his life and is bonded with them"]; *In re J.C.*, *supra*, 226 Cal.App.4th at p. 526 [mother "did not establish [the child's] need for permanency and stability would be advanced by an order returning [her] to [the mother's] care" because the maternal aunt, who had assumed full responsibilities for raising the child since her birth, "was the only constant and stable parent [the child] had ever known"].)

14

T.P. also argues that, "[w]ith few exceptions, [she] maintained regular visits with" H.B. The facts are to the contrary. As discussed, T.P. stopped visiting H.B. for seven months in 2017, and in 2018 she again disappeared from H.B.'s life for seven weeks when the Department informed T.P. her visits with H.B. would be monitored. A third unexplained gap in visitation occurred in the two months leading up to T.P.'s incarceration in October 2018. These numerous and lengthy lapses in visits created instability in H.B.'s life and weighed against granting T.P. additional reunification services. (Cf. *In re J.M.*, *supra*, 50 Cal.App.5th at p. 850 [trial court abused its discretion in denying the mother's section 388 petition for additional reunification services because the mother "did what the court asked of her," "never stopped visiting her son [and] never stopped asking for overnight visits and placement in her home," which showed "a tremendous level of initiative and dedication, and suggests that it would be in [the child's] best interests to be placed with her"].)

H.B. has lived with the uncertainty of foster care for more than four years, which for her is literally a "lifetime" (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 310). H.B.'s interest in permanency and stability, which the court deferred for a considerable amount of time to give T.P. a second chance at resolving her drug addiction and substance abuse issues, outweighed T.P.'s interest in a last-minute reinstatement of reunification services. (See *id.* at p. 309 ["[t]he parent is given a reasonable period of time to reunify and, if unsuccessful, the child's interest in permanency and stability takes priority"]; *D.T. v. Superior Court* (2015) 241 Cal.App.4th 1017, 1034 ["Our juvenile court law . . . shift[s] the emphasis of the proceedings over time from the goal of preserving the family at the outset to that of protecting and promoting the best interests of the child if

15

efforts at reunification produce unsatisfactory results or drag on too long."]; *In re Edward H., supra,* 43 Cal.App.4th at p. 594 ["the prospect of an additional six months of reunification to see if the mother would and could effectively separate from the father would not have promoted stability for the children and thus would not have promoted their best interests"].)

## DISPOSITION

The order denying T.P.'s petition under section 388 is affirmed.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.